# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.                                                                                                                             Cr. No. 01-310 BB

**CLARENCE KENNEDY**,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## PARTIALLY GRANTING MOTION TO SUPPRESS EVIDENCE

**THIS MATTER** comes before the Court on the defendant's motion to suppress evidence seized following a warrantless search of his residence (Doc. 110). The Court held an evidentiary hearing on March 27, 2002 (Doc. 116). Having fully considered the evidence adduced at the hearing, the defendant's motion, the plaintiff's response in opposition (Doc. 114), the arguments of counsel, and the relevant legal authorities, the Court finds that the defendant's motion should be **GRANTED in part** and **DENIED in part**. The Court makes the following findings of fact and conclusions of law:

## I.
## FINDINGS OF FACT

    1.    Brett Johnson ("Landlord") leased a townhouse ("Property") in Clovis, New Mexico, to a man named Tommy Ross. Law enforcement officials subsequently learned that Defendant Clarence Kennedy ("Defendant") used the moniker "Tommy Ross" as an alias. Defendant concedes that he leased the Property from the Landlord under his alias "Tommy Ross."

    2.    On January 3, 2001, while checking on the neighboring unit, the Landlord noticed six dogs living at the townhouse he had just leased to Defendant. He went over to talk to Defendant but

Mario Espinoza, Jr. ("Junior"), answered and said Defendant was out of town. The Landlord informed Junior the lease prohibited pets.

3. On January 8, 2001, the Landlord posted a seven-day notice to relinquish the townhouse based on the unauthorized pets. Since the pets were gone on his next visit, he did not pursue eviction at that time.

4. The Landlord received complaints from Defendant's neighbors regarding the amount of vehicle traffic, partying, and noise at the Property. The Landlord went by the Property and personally observed the matters of which the neighbors complained. Every time the Landlord went to the Property he spoke with Junior, because after the date the lease was signed he never again saw Defendant. Junior was not a party to the lease.

5. On January 31, 2001, the Landlord served a three-day eviction notice at the Property. However, before going to the Property for that purpose, the Landlord contacted Sheriff Roger Hatcher ("Sheriff") of the Curry County Sheriff's Department to report alleged drug activity at the Property. The Landlord asked the Sheriff if he could go by the Property. The Sheriff told dispatch to send Deputy Michael Reeves to the Property. The Sheriff understood that the Landlord was going to meet Deputy Reeves at the Property.

6. Deputy Reeves, who has been a police officer for about twenty years with the Clovis Police Department and has participated in hundreds of crack cocaine drug busts, arrived first at the Property. He went to the front door of the townhouse to ask for the Landlord. The person who answered the door, Junior, looked surprised and nervous. Deputy Reeves immediately noticed the strong and distinct odor of crack cocaine wafting out of the doorway. He called for backup and Deputy Larry Plotkin arrived within a few minutes.

7. Deputy Reeves asked Junior if he lived in the townhouse. Junior said that he did not; that he was house-sitting for Defendant. When Deputy Reeves asked if anyone else was in the dwelling, Junior pointed to a young male who was sitting in a chair in the living room. Deputy Reeves called the young male, later identified by law enforcement officials as Antonio Waites, to the doorway. Mr. Waites identified himself as "Dontae Stevenson" but was unable to say whether his last name was spelled with a "v" or with "ph".

8. Deputy Plotkin asked Junior for permission to search the townhouse. Junior said that he could not give consent, because it was not his residence. Junior was then asked for his identification; he produced court documents with his name on them from a console in a sofa.

9. Deputies Reeves and Plotkin ("Deputies") soon thereafter heard sounds of rushed activity in the back of the townhouse. Deputy Reeves believed that the sound was consistent with someone trying to flee the residence through a window. He ran through the townhouse to find the person or persons he believed were fleeing from the residence. As he was making his way through the townhouse, Deputy Reeves encountered Amanda Padilla and Mario Espinoza, Sr. ("Senior"). He noticed that a window in the back of the house had been broken out. He also saw in plain view several rocks of crack cocaine lying on top of a stereo speaker. While looking for people in the bedroom closet, Deputy Reeves later saw an eight-ounce measuring cup that contained a cloudy white liquid and a plastic bag with white residue. Deputy Reeves seized the items as evidence.

10. Clovis City Police Patrolman Keith Farkas arrived at the Property in response to another assistance call and began to assist the Deputies in the protective sweep of the townhouse. He opened a kitchen closet and saw a large glass bowl containing a substance he believed was crack cocaine. He seized the bowl as evidence.

11. Officer Farkas also looked for evidence in areas not related to the protective sweep, such as the inside of a toilet tank. Deputy Reeves also looked for evidence. He found a small bag containing crack cocaine in the sofa console from which Junior had retrieved the documents. He seized the bag as evidence. Later that evening, the Sheriff contacted the Landlord and asked him to secure the Property. The Landlord did so by changing the locks and posting a notice for Defendant to call him. Defendant did not call for a couple of weeks.

12. On February 1, 2001, the Landlord called the Sheriff, who he knew since childhood, about the Property. The Landlord told the Sheriff that he would consider the townhouse abandoned and intended to clean it out. The Sheriff told him to check the lease on the abandonment language. The Landlord seemed uneasy about going alone to the Property, and so the Sheriff offered to and did go with him.

13. While the Landlord was cleaning the townhouse, the Sheriff "snooped" around looking for more evidence. In the kitchen, the Sheriff discovered and seized numerous items as evidence of drug trafficking. The Landlord and the Sheriff noticed a "Colortyme Rentals" sticker on a piece of living room furniture, and the Landlord contacted Colortyme to retrieve its furniture. In the course retrieving the furniture, a Colortyme employee discovered a package of cocaine between the mattresses Colortyme was repossessing. The Colortyme employee informed the Sheriff about his discovery. The Sheriff seized the package of cocaine as evidence.

## II.
## CONCLUSIONS OF LAW

1. The Fourth Amendment guarantees "[t]he right of the people to be secure in their . . . houses." U.S. Const. Amend. IV; see Payton v. New York, 445 U.S. 573, 589 (1980); United States v. United States Dist. Court, 407 U.S. 297, 313 (1972) ("[P]hysical entry of the home is the

4

chief evil against which the wording for the Fourth Amendment is directed."). It is, therefore, well established that warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).

2. Law enforcement officers may search a house without a warrant when exigent circumstances exist. See United States v. Scroger, 98 F.3d 1256, 1259 (10th Cir. 1997). Exigent circumstances exist when police officers are acting to prevent the imminent destruction of evidence, or when police officers are conducting a protective sweep of the premises for their safety or for the safety of private citizens. See id. at 1259-60; see also Minnesota v. Olson, 495 U.S. 91, 100 (1990); United States v. Anderson, 154 F.3d 1225, 1234 (10th Cir. 1998), *cert. denied*, 526 U.S. 1159 (1999).

3. The government has the burden of proving that sufficient exigency existed. See Scroger, 98 F.3d at 1256; see also Chimel v. California, 395 U.S. 752, 762 (1969). Whether the government has met its burden is judged from the perspective of the "prudent, cautious and trained" officer. See Scroger, 98 F.3d at 1259.

**A.
Search on January 31, 2001**

4. Deputy Reeves, a twenty-year veteran of the Clovis Police Department who actively participated in hundreds of crack cocaine drug busts, was lawfully at the doorway of the townhouse when he smelled a strong odor he associated with crack cocaine. That fact, coupled with Junior's nervousness, Mr. Waite's inability to spell his own alleged surname, and the sound of "rushed activity" in the back of the townhouse even though Junior had earlier stated that he and Mr. Waites were the only persons in the residence, provided the Deputies with probable cause that a crime was

5

being (or had recently been) committed on the premises. See id.; see also United States v. West, 219 F.3d 1171, 1178 (10th Cir. 2000) ("An officer's detection of the smell of drugs . . . is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause."), *citing* United States v. Ozbirn, 189 F.3d 1194, 1200 (10th Cir. 1999) (holding that smell of drugs emanating from a vehicle, along with driver and occupant's nervous, talkative, and overly-friendly behavior, and vague description of their travel plans constitutes probable cause); United States v. Parker, 72 F.3d 1444, 1450 (10th Cir. 1995).

5.     Deputy Reeves, Deputy Plotkin, and Officer Farkas were further justified in performing a protective sweep of the townhouse so as to prevent the imminent destruction of evidence and to secure officer and public safety. See Scroger, 98 F.3d at 1256; United States v. Blount, 123 F.3d 831, 838 (5th Cir. 1997); United States v. Grisset, 925 F.2d 776, 778 (4th Cir. 1991); United States v. Chavez, 812 F.2d 1295, 1299-00 (10th Cir. 1987).

6.     During the normal course of their appropriate protective sweep, Deputy Reeves, Deputy Plotkin, and Officer Farkas observed in plain view several items constituting evidence of crack cocaine possession and manufacturing, so they properly seized those items as evidence (with certain exceptions listed below in paragraph 7). See United States v. Flores, 149 F.3d 1272, 1278 (10th Cir. 1998) ("[I]f police officers conducting a proper protective sweep of a dwelling come across evidence of criminal activity in plain view they may seize it, so long as that evidence is such that a reasonable police officer would conclude, based on experience and the circumstances, that the item is probably incriminating.").

7.     Once the police officers have conducted a protective sweep looking for other occupants, the appropriate procedure is for them to seal the premises and to obtain a search warrant.

6

See Segura v. United States, 468 U.S. 796, 810 (1984); Michigan v. Clifford, 464 U.S. 287, 293 (1984) (plurality decision). Any evidence seized by Deputy Reeves in the sofa console (including a bag of crack cocaine) and by Officer Farkas in the toilet tank will be suppressed, as such evidence was neither discovered nor seized within the proper scope of their protective sweep. See United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir. 1991) (characterizing as invalid the seizure of illegal drugs discovered during a search of drawers and cabinets that exceeded the proper scope of a protective sweep).

## B.
## Search on February 1, 2001

8. The Landlord independently decided to reenter the premises and to call Colortyme Rentals to retrieve its furniture on February 1, 2001, so any evidence obtained by them and turned over to the Sheriff will not be suppressed. See United States v. Humphrey, 208 F.3d 1190, 1203 (10th Cir. 2000) ("It is clear that the Fourth Amendment does not apply to searches by private parties, absent governmental involvement."); United States v. Smythe, 84 F.3d 1240, 1243 (10th Cir. 1996) ("Fourth Amendment protection against unreasonable searches and seizures is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.") (internal quotations omitted). It is therefore irrelevant whether the Landlord's conclusion was legally correct. See United States v. Dahlstrom, 180 F.3d 677, 681-2 (5th Cir. 1999); United States v. Knoll, 16 F.3d 1313, 1319 (2nd Cir. 1994).

9. The Sheriff, Deputy Reeves, and Deputy Plotkin had no legal justification for searching the Property on February 1, 2001, so any evidence obtained by them on that date will be suppressed. See Katz, 389 U.S. at 357.

## **ORDER**

**Wherefore**,

**IT IS ORDERED** that:

1. Evidence seized on January 31, 2001, will not be suppressed, except that any evidence seized from the sofa console or from the toilet tank will be suppressed;

2. Evidence seized on February 1, 2001, by private actors Brett Johnson and Colortyme Rentals will not be suppressed; and

3. Evidence seized on February 1, 2001, by law enforcement officers Roger Hatcher, Michael Reeves, and Larry Plotkin will be suppressed.

**DATED** at Albuquerque this 1st day of April, 2002.

*[signature]*
BRUCE D. BLACK
United States District Judge

**Attorneys:**

For Plaintiff United States of America:

    James R.W. Braun, Albuquerque, N.M.

For Defendant Clarence Kennedy:

    Marc H. Robert, Albuquerque, N.M.